**Electronically Filed
Intermediate Court of Appeals
29553
09-MAY-2014
08:51 AM**

NO. 29553

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

HIROKAZU NAKAJIMA,
Plaintiff/Cross-Defendant/Appellant,
v.
AKI NAKAJIMA,
Defendant/Cross-Plaintiff/Appellee

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DIVORCE NO. 05-1-0587)

MEMORANDUM OPINION
(By:  Foley, J. and Fujise, J., with
Nakamura, C.J. concurring and dissenting separately)

Plaintiff/Counterclaim Defendant/Appellant Hirokazu Nakajima (**Hirokazu**) appeals from various orders entered in the Family Court of the Second Circuit[1] (**family court**) arising from his divorce from Defendant/Counterclaim Plaintiff/Appellee Aki Nakajima (**Aki**).  The Hawai‘i Supreme Court held that one of those orders, the "Order (re: Hearing on Plaintiff's Motion for Clarification of Divorce Decree Entered on June 24, 2008 Filed on July 7, 2008, and Other Matters)" (**November Order Re Motion for Clarification**), entered November 26, 2008 was appealable.

Hirokazu contends the family court erred by[2]:

---

[1]    The Honorable Keith E. Tanaka presided.

[2]    Hirozaku's opening brief exceeds 35 pages in violation of Hawai‘i Rules of Appellate Procedure (HRAP) Rule 28(a).  Counsel for Hirozaku is warned.  Future noncompliance with HRAP Rule 28 may result in sanctions.

(1) finding Avalon Cove, Inc. (**Avalon Cove**) to be a marital asset;

(2) awarding Aki one-half of a conjectural increase in his Stockholder Equity in Avalon Cove when no evidence was submitted by either party during the course of the trial that any such increase occurred;

(3) directing the parties to submit written real estate appraisals of the Setagaya and Meguro properties for the family court's in camera selection without further hearing or opportunity for the parties to examine the authors of said appraisals;

(4) failing to conduct an evidentiary hearing to determine the value of Avalon Cove as of the date of marriage;

(5) allowing a translator to testify based on translations of Japanese language documents prepared after the May 6, 2008 trial;

(6) entering its Finding of fact (**FOF**) 40;

(7) denying his Request for Protective Order for documents relating to Avalon Cove over which he had no control or possession, without finding whether he had the ability to obtain these documents, and by awarding sanctions against him for failing to provide these documents;

(8) ordering him to pay Aki's attorney's fees and costs incurred in legitimating her immigration status and obtaining an authorization card when that issue was not a trial issue nor a property division as specified by law;

(9) ordering the division of the Ameritrade security account as a retirement account;

(10) making a decision regarding property in Japan, which was a question of foreign law, without first determining the issue of foreign law;

(11) issuing a garnishment order without first issuing a judgment for sums; and

(12) entering FOFs 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 41, 42, 43, 44 and 53.

2

## I. BACKGROUND

This appeal stems from a divorce proceeding between Hirokazu and Aki, who were married in Japan on November 19, 2004. At the time of the divorce proceeding, Hirokazu was retired and marketing himself as a young retired millionaire through publications in Japan. He owned numerous assets that included accounts at TD Ameritrade Finance, H.S. Trade, and Pregoshare; stock interests in Avalon Cove[3]; receivables from Avalon Cove; an annuity or a retirement account at Nationwide and Oppenheimer funds; and copyrights and royalty rights from Ascom, a publishing company which published two books allegedly written by both Hirokazu and Aki.

On November 25, 2005, Hirokazu filed his Complaint for Divorce on the basis that the marriage was irretrievably broken. Aki answered Hirokazu's Complaint for Divorce and filed a Cross-Complaint for divorce on December 22, 2005, claiming she was entitled to an order that Hirozaku pay spousal support to her.

On January 3, 2006, Aki filed a request for production of documents and answers to interrogatories. On May 17, 2006, Hirozaku's counsel, Blake Okimoto (**Okimoto**), certified that Hirozaku's responses to Aki's request for answers to interrogatories would be duly served on Aki's counsel, Junsuke Otsuka (**Otsuka**). Aki alleged that several key documents, specifically those involving Avalon Cove's asset and debts and other investments, were missing from Hirozaku's responses and sent a letter to Okimoto on May 16, 2006 identifying the missing documents.

On June 22, 2006, the parties filed a "Stipulation RE: Temporary Relief" that enjoined and restrained each party from: (1) "transferring, encumbering, wasting, or otherwise disposing of any real or personal property, except as necessary, over and above current income, for the ordinary course of business or for

---

[3] Appellant incorporated Avalon Cove in Japan in 1998. Avalon Cove used mortgage financing to purchase two income-producing properties in Tokyo: the Setagaya property (**Setagaya**) and the Meguro property (**Meguro**).

usual living expenses[;]" (2) "listing, marketing for sale, conveying and/or attempting to sell any real property (domestic and/or foreign) owned by the parties[;]" and (3) "listing, marketing for sale and/or attempting to sell any business owned by the parties[.]" The parties were allowed, however, to buy and sell stock in the ordinary course of their business with the understanding that assets could be subject to possible document production demands in the future.

By letter dated July 28, 2006, Hirozaku's counsel, Okimoto, wrote to Otsuka in response to Aki's request to "finish his interrogatories."

On April 6, 2007, Aki filed her "Second Request to Plaintiff for Production of Documents" (**Second Request for Documents**). On June 4, 2007, Hirokazu responded by filing his "Motion for Protective Order Against Defendant's Second Request For Production of Documents Dated April 6, 2007." Hirokazu argued the information which Aki requested "is well beyond general information to determine the disbursement of assets" and is akin to a "fishing expedition" into Hirokazu's financial situation. "With the exception of a one-third (1/3) interest in [sic] Japanese Partnership named 'Asset Gain'," Hirokazu objected to Aki's request to provide information relating to assets that he did not own and rather belonged to his mother, Shizume Nakajima (**Mother**). "In this regard, [Hirokazu sought] a protective order barring and preventing any and all disclosure to [Aki] regarding assets that are not personally his." Hirokazu denied that requested materials were within his possession and control. Hirokazu argued, "issues as to property division should be confined to the parties' assets and liabilities as set forth in their respective financial statements." Aki filed a cross-motion to compel discovery on August 20, 2007.

On September 19, 2007, the family court held a hearing on Hirokazu's motion for a protective order against Aki's Second Request for Documents. Hirokazu introduced a copy of an agreement dated August 16, 2004, which allegedly transferred

4

Hirokazu's stock ownership of Avalon Cove. Aki's counsel, Otsuka, asked why Hirokazu could produce the "transfer of stocks" documents for the hearing but could not do so for Aki's Second Request for Documents. Otsuka further contended Hirokazu's assertion that he had no control over Avalon Cove's documentation was inconsistent with paragraph 9 of his affidavit, which stated, "I received reports regarding the status of Avalon Cove, so I would be able to help my mother as she is not receiving sufficient income and needs financial assistance." Otsuka also represented Japanese law as requiring the actual transfer of stock certificates and therefore documentation of a transfer of stocks constitutes "only circumstantial evidence of any transfer of stocks."

Hirokazu's counsel, Okimoto noted Otsuka referred to statements Hirokazu wrote in his book and contended Hirokazu used "literary license" such that his written statements in that book were not necessarily accurate. The family court stated it would deny Hirokazu's motion for a protective order and would grant the motion to compel protection of documents "even though [Okimoto is] saying this is not in [Hirokazu's] control . . . because there is [sic] some kind of documents that he can at least get, if not from the corporation, from other family members or his own records, like gift tax payments, his salary, the tax payments, 2005 tax payments, . . . passbook statements, withholding statements, the property tax assessment[.]"

On October 5, 2007, the family court granted Aki's cross-motion to compel discovery and ordered Hirokazu to produce all documents requested in Aki's Second Request for Documents The family court also issued an order denying Hirokazu's June 4, 2007 motion for protective order against Aki's Second Request for Documents.

On December 6, 2007, Hirokazu again filed another motion for a protective order against Aki's second request for production of documents, this time seeking protection from Aki's request of production of financial documents and materials

5

relating to Avalon Cove. Hirokazu alleged Mother, the owner of Avalon Cove, wrote him a letter dated October 10, 2007 in which she stated she would not provide the requested documents to him. The translation of the letter Hirokazu provided stated in pertinent part:

> I cannot agree with your request that documents and financial statements of Avalon Cove be given to you for the purpose of your divorce. The [stockholder] of [Avalon Cove] is me . . . . I bought it from you before you got married to Aki. You are no longer the owner of Avalon Cove. I will not agree to provide any of the documents and statements because they are personal to me.
>
> I am concerned that if I give you papers regarding my Avalon Cove they will be used for no good purpose and I will be damaged. Now Avalon Cove has absolutely nothing to do with you and your divorce procedure in [Hawai'i]. My property is entirely nothing to do with the distribution of your property.
>
> Please understand.

On December 17, 2007, Aki filed a "Motion for Civil Sanctions Under [Hawai'i Family Court Rules (HFCR)] Rule 37" against Hirozaku for willfully failing to comply with the family court's October 5, 2007 "Order Granting Defendant/Cross-Plaintiff Aki Nakajima's Cross-Motion to Compel Discovery, filed 8/20/07." In his declaration supporting the motion for civil sanctions, Otsuka stated that a public record from the Japanese Ministry of Justice dated March 20, 2007 indicated Hirokazu had been reappointed as director of Avalon Cove on October 17, 2005 and noted that Hirozaku had represented the alleged sale of Avalon Cove to Mother as having occurred on August 16, 2004.

Aki received a document dated January 3, 2008 entitled, "Plaintiff's Second Amended Responses to Defendant's Second Request for Production of Documents dated April 6, 2007."

On January 15, 2008, the family court entered its "Order (RE: Hearings on[:] 1) Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007 filed 12/6/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion to Continue Trial Filed 12/17/07; and 4) Other

Matters)" (**January Discovery Order**). The family court denied Hirokazu's motion "because the alleged letter from [Mother] is insufficient to show compliance" with its order granting Aki's motion to compel discovery. The family court also ordered Hirokazu to produce his 2005 and 2006 U.S. income tax returns within 14 days of the hearing. The family court continued Aki's motion for civil sanctions until March 13, 2008, and provided Hirozaku two more weeks from the date of its January 8, 2008 hearing to comply with its order to produce documents in response to Aki's Second Request for Documents.

On February 22, 2008, Aki served a third request for production of documents on Hirokazu. On February 27, 2008, Aki filed a "Motion to Compel Discovery" because Hirokazu had again failed to produce all that was requested.

Also on February 27, 2008, Aki filed a "Motion to Determine Foreign Law As To Alleged Sale Stocks" wherein she moved the family court "for an order determining that under Japanese law, as a matter of law, [Hirokazu had] failed to show that the stocks he held for Avalon Cove, Inc. were transferred to his [Mother] because the alleged transfer [did] not comply with Article 128(1) of the Companies Act (Japanese law)."

On March 10, 2008, Aki filed a translation of her declaration in support of her December 31, 2007 motion for pre-decree relief. Aki declared Hirokazu inflicted physical abuse upon her in November 2005, a TRO was issued.[4] Initially Hirokazu left the marital home but given the choice of paying the monthly rent or moving out, Aki chose to move out of the marital home instead. She was not authorized to work in the U.S. until her immigration petition under the Violence Against Women Act was approved and she received an "Employment Authorization Card." Aki stated that she did not believe that Hirokazu had no income from Japan because this was contrary to what he had told her.

---

[4] On May 6, 2008 Hirokazu testified that, in 2005, Aki hit his cheek and he told her that he would hit her because she hit him first. Hirokazu said he "didn't hit her very hard." He denied hitting her again on October 8, 2005.

7

On March 13, 2008, the family court held a hearing on Hirokazu's motion for protective order against Aki's Second Request for Documents, motion for civil sanctions, motion for predecree relief, and motion to determine foreign law as so alleged on stocks filed on February 27, 2008. Hirozaku agreed to turn over "whatever records and files [he had] and have them translated" in fourteen days (March 28, 2008) and based on that agreement, Aki moved to withdraw her motion to compel.

On April 25, 2008, Hirokazu filed a "Notice of Intent to Offer and Utilize Evidence," which gave notice of the intent to offer and utilize the parties' Prenuptial Agreement, dated November 10, 2004 and written entirely in Japanese.

On May 2, 2008, the family court entered an order entitled "Order (RE: Hearings on[:] 1) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 2)Defendant/Cross-Plaintiff Aki Nakajima's Motion to Compel Discovery Filed on 2/27/28; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion [to] Determine Foreign Law As To Alleged Sale of Stocks Filed 2/27/08; 4) Defendant/Cross-Plaintiff Aki Nakajima's Motion and Affidavit for Pre-Decree Relief Filed 12/31/08; and 5) Other Matters)" (**May Discovery Order**). The family court continued Aki's motion for civil sanctions until trial, but ordered Hirokazu for a third time to produce the documents requested this time by March 28, 2008. As to Aki's motion to compel discovery, the family court noted that Aki withdrew this motion without prejudice based on Hirokazu's counsel's representation that he would produce all of the requested documents and information by March 28, 2008. The family court took Aki's motion for determining foreign law under advisement.

Also on May 2, 2008, Aki filed a "Motion in Limine to Exclude Prenuptial Agreement."

The family court held trial on May 6, 2008 and June 3, 2008. At the May 6, 2008 trial, Masako Yamaguchi (**Yamaguchi**) served as Aki's translator. Yamaguchi declared she was a

8

professional translator and a registered court interpreter with the Hawai'i State Judiciary.

During his cross-examination on May 6, 2008, Otsuka asked Hirokazu to look at Exhibit NNN, which consisted of English excerpts from Exhibit GGG. Hirokazu denied the document said, "stock certificate" but rather said "certificate of all registered items." Hirozaku testified the translation "stock certificate" was not correct.

On June 4, 2008, both parties filed exhibit lists.

On June 24, 2008, the family court entered a divorce decree (1) dissolving the marriage between Hirokazu and Aki; (2) recognizing the couple had no children born of the marriage; (3) awarding no spousal support, but acknowledging Hirokazu's binding promise to pay for reasonable attorney's fees and costs incurred in legitimating Aki's immigration status and obtaining and renewing her Employment Authorization Card; and (4) dividing and distributing their property and debt.

The divorce decree states, "[t]here are no jointly owned securities. Each is awarded the securities held solely in their separate names. [Hirokazu's] American Express portfolio is awarded to [Hirokazu] as his sole and separate property." It also states Hirokazu has annuities or retirement accounts at Nationwide, Oppenheimer Funds, and Ameritrade and awarded him his retirement accounts and annuities as his sole and separate property. Hirokazu's retirement benefits, however, were marital property subject to equitable division and Aki is entitled to her share of Hirokazu's retirement benefits.

Regarding Avalon Cove, the family court awarded Aki "her martial partnership share of the increase in value of [Hirokazu's] interest in [Avalon Cove] from the date of marriage to the end of the trial." The family court further ordered:

> If the parties cannot reach an agreement as to a determination of that value, based upon [Hirokazu's] claim that in 2004, Avalon Cove's value was $100,000.00, this amount shall be the starting value. The current value of the stocks shall be determined by an appraiser to asses [sic] the current market price of the Setagya and Meguro

9

properties. If the revised stockholder equity amount is greater than $100,000.00, [Aki] shall have half of the increased amount as equalization payment. (If the parties cannot reach an agreement as to an appraiser, each party may each submit three proposed Japanese real estate appraisers for [the family] court's selection within two weeks from the decree. [Hirozaku] shall pay the appraisal costs.)

The family court awarded Hirozaku's books to Hirokazu as his sole and separate property and ordered that post-divorce royalties and liabilities for these books would be evenly divided.

On July 7, 2008, Hirokazu filed a "Motion For Clarification Of Divorce Decree Entered On June 24, 2008," pursuant to HFCR 60(b)(1)[5] (**Motion for Clarification**). Hirokazu sought clarification "as to the enumeration of Ameritrade as an annuity or retirement account" because "the Ameritrade account indicates that it is a securities account." Noting the divorce decree stated "the current value of the [Avalon Cove] stocks shall be determined by an appraiser to assess the current market price of Setagya and Meguro properties[,]" Hirokazu sought clarification as to the net current value of the properties and argued this value should include any existing debt including the mortgage balances as of the end of the trial. Hirokazu also sought clarification of the family court's award of his books as his "sole and separate property" and argued that post-divorce royalties from those books should likewise be his separate property.

In his "Supplemental Declaration Of Counsel In Support Of Plaintiff's Motion For Clarification Of Divorce Decree Entered On June 24, 2008 Filed On July 7, 2008," Hirokazu requested an evidentiary hearing where the parties could submit evidence in the form of testimony and exhibits to determine the value of Avalon Cove measured by either the book value or the fair market

---

[5] HFCR Rule 60, "Relief From Judgment or Order," allows for relief "[o]n motion and upon such terms as are just, the court may relieve a party . . . from any or all of the provisions of a final judgment, order or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]" HFCR Rule 60(b)(1).

value, but not both.

On July 8, 2008, the family court entered the "Order Granting Award of Alimony and Attorneys Fees And Costs" (**Order Granting Fees and Costs**) awarding Aki $14,817.55 in attorney's fees and costs at Hirokazu's expense. The family court specified that $5,885.06 out of $14,817.55 was awarded to Aki to pay for her immigration processing.[6] The other $8,932.49 was awarded to Aki for the reasonable costs and attorney's fees associated with her August 20, 2007 motion to compel discovery, her December 17, 2007 motion for civil sanctions, and her February 27, 2008 motion to determine Japan as foreign law regarding the alleged sale of stock.

On July 16, 2008, the family court entered the "Order Selecting Real Estate Appraiser" (**Order re Appraiser**), to assist in the valuation of the assets of Avalon Cove and Hirozaku was ordered to pay the appraisal costs. By letter dated July 16, 2008, Aki's counsel submitted an invoice of 650,000 yen for the appraisal.

On August 12, 2008, Aki filed an "Ex-Parte Motion for Issuance of Garnishee Summons After Judgment," requesting garnishment of Hirokazu's accounts because he failed to pay the appraisal fee. The family court granted the motion that same day.

On September 8, 2008, Aki filed her "Position Statement As To Plaintiff's Motion For Clarification OF Divorce Decree Entered On June 24, 2008" (**Position Statement**) on Hirokazu's Motion for Clarification. The Position Statement included Katsuhiro Miyata's (**Appraiser**) September 8, 2008 report on the two Avalon Cove properties and "Avalon Cove's Book Records," which was Hirokazu's Exhibit 37, admitted at trial. Aki pointed out Hirozaku's Exhibit 37 took the position that stockholder equity in Avalon Cove at the time of the divorce was 6,032,116

---

[6]     During the marriage, Hirokazu promised he would sponsor Aki's immigration to the United States, and amid the divorce proceedings Aki incurred $5,885.06 in attorney fees and costs to legitimize her immigration status and to obtain and renew her Employment Authorization Card.

yen or $60,321. The Appraiser, however, assessed the present market value of both Avalon Cove properties and the stockholder equity figures were adjusted from 6,032,116 yen ($60,321) to 98,618,749 yen ($986,187.49). Because the divorce decree found Hirozaku's equity in Avalon Cove at the time of marriage was 10,00,000 yen ($100,000), Aki calculated her equalization payment to be $443,094.

The Position Statement stated Hirozaku's position that "Ameritrade are stock accounts in nature rather than retirement funds" was correct and noted the Ameritrade account may have been confused with the Ameriprise account. Aki, however, urged the family court to take notice that the Ameritrade account had not been disclosed until Hirozaku's last asset and debt statement and to award it to Aki as a sanction.

On October 1, 2008, Hirokazu filed a "Supplemental Declaration Of Counsel In Support Of [Hirokazu's] Motion For Clarification Of Divorce Decree Entered On June 24, 2008, Filed On July 7, 2008" (**October Supplemental Declaration**). Okimoto requested the family court set an evidentiary hearing with regard to the valuation of Hirokazu's interest in Avalon Cove from the date of marriage until the issuance of the divorce decree.

On October 8, 2008, the family court held a hearing on the Motion for Clarification. Okimoto noted the family court selected an appraiser suggested by Aki and the cost of the Appraiser as represented to the family court would be 6,000 yen. Okimoto stated the Appraiser had submitted a bill for 650,000 yen. Otsuka admitted to having made a typographical error in regard to the Appraiser's fee, which was supposed to be $6,000 instead of 6000 yen (6000 yen is $60.00).[7] Otsuka represented $6,000 to be a reasonable appraiser's fee. The family court denied Hirozuka's oral motion to revise the appraiser selection process and his oppositions to garnishment orders. In regard to Hirozaku's motion to clarify that the Ameritrade account was a

---

[7] The parties stipulated to a currency conversion rate of $1=100 yen.

12

securities and not a retirement account, the family court stated:

> [Family Court]: Yeah, I was basing, if I remember correctly, and it's been a while since we had trial, but it was based on your client's own exhibit. He said these were retirement accounts, you know. I think that was his own exhibit.
>
> [Okimoto]: It is not a retirement account.
>
> [Family Court]: But that's what his exhibit essentially showed.
>
> [Hirozaku]: No, that's not right.
>
> [Otsuka]: Now it's clarified, your Honor.
>
> [Family Court]: So, in any event, I'm denying your motion and I'm going to ask [Aki's counsel] to prepare the order from today's ruling.

On November 19, 2008, the family court entered a garnishment order regarding the $6,012.11 appraisal fee that Hirokazu had failed to pay.

On November 26, 2008, the family court entered the November Order Re Motion for Clarification.[8] The family court found:

> Exhibit 37, submitted by Hirokazu at trial as the alleged value of Avalon Cove is not in agreement with the [October Supplemental Declaration]. In the [October Supplemental Declaration, Okimoto] implie[d] that Exhibit 37 may be merely a book value of Avalon Cove. If this is true, it is in conflict with Hirokazu's initial position that the alleged $100,000 stock sale to his [Mother] was a legitimate transaction. This would imply that the alleged stock sale approximated the book value and not the fair market value, impeaching Hirokazu's own statement that the transaction was legitimate. The doctrine of quasi-estoppel prohibits the reconsideration of the value of Avalon Cove at the time of marriage.

The family court found no due process violation occurred by determining the value of the Avalon Cove properties without an evidentiary hearing because the family court's valuation method reflected sanctions against Hirokazu for concealing his assets. The family court found the misstatement of the currency of the estimated appraisal fee to be immaterial and refused to set aside the substance of the appraisal report. Hirokazu was ordered to pay Aki $443,094 in equalization payments

---

[8] This motion hearing was continued multiple times.

for Avalon Cove. The family court also denied Hirokazu's motion for clarification of: (1) the equity value of Avalon Cove because Aki's position was also that the mortgage balance can be included in the calculation of that equity value; (2) the Ameritrade issue, because the family court's ruling was based on Hirokazu's own position; and (3) the Ascom book copyright and royalties issue.

On December 26, 2008, Hirokazu filed a notice of appeal from the following documents:

(1)    the "Order Denying Plaintiff's Motion For Protective Order Against Defendant's Second Request To Plaintiff For Production of Documents Dated April 6, 2007, Filed 6/4/07," filed October 5, 2007 (**October Discovery Order**);

(2)    the January Discovery Order;

(3)    the May Discovery Order;

(4)    the "Decree Granting Absolute Divorce," filed on June 24, 2008;

(5)    the Order Granting Fees and Costs;

(6)    the Order re Appraiser;

(7)    the "Order Granting Ex Parte Motion For Issuance Of Garnishee Summons After Judgment"; "Garnishee Summons and Order" (as found in Defendant/Cross-Plaintiff's Ex Parte Motion of Issuance Garnishee Summons After Judgment; Declaration of Junsuke Otsuka; Exhibit 'A'-'D'; Order Granting Ex Parte Motion for Issuance of Garnishee Summons after Judgment; Garnishee Summons and Order; Garnishee Information), filed on August 12, 2008;

(8)    the "Garnishment Order," filed November 19, 2008;

(9)    the November Order Re Motion for Clarification; and

(10)   the "Supplemental Decree," filed on December 29,

2008.[9]

On January 5, 2009, Hirokazu filed his request for entry of findings of fact and conclusions of law.

On January 23, 2009, Hirokazu filed a motion to stay pending appeal the family court's various orders regarding payment of alimony, attorneys' fees and costs.

On February 3, 2009, the family court filed its Findings of Fact and Conclusions of Law (**FOFs/COLs**). Pertinent FOFs, including those Hirokazu contests on appeal, are as follows:

> 26. There was evidence of numerous violation [sic] of the financial restraining order dated June 22, 2006 by [Hirokazu]. They include substantively reducing the account at Citibank, Japan (Ex. 52); closing of his bank account at Mitsui-Sumitomo Bank (Ex "3"); selling his Mercedes M1320 and 1995 Yamaha Wave Runner; closing Ameriprise account (Ex "10" & "P["], "52"); closing E-Trade account. Ex "EEE" & 52; and selling Asset Gain in June of 2007 for $40,000 in violation of financial restraining order. Ex M (Heisei 19 6-18 and 6-17 entries).

> 27. There was evidence of numerous nondisclosure and/or misrepresentation in the previous asset and debt statements of [Hirokazu]. There was the nondisclosure of Ameritrade account. Ex "11" & "Q". This account was opened during marriage. Ex 52. However, this account was not disclosed in the prior asset and debt statement. Ex. "CCC", "DDD", "EEE".

> 28. There was also nondisclosure of the HS Trading account. Ex "16" & "S". The account existed as of marriage. Ex 52. This account was not disclosed in the prior asset and debt statement. Ex. "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H". In violation of the financial retraining [sic] order, [Hirokazu] depleted all the monies in this account. Ex "52".

> 29. There was also the nondisclosure of Prego Share. [Hirokazu] invested in Prego Shares. Ex "17" and "T". Husband claims he was deceived (Ex 52), but there is no evidence he filed a lawsuit in Japan. Furthermore, this account was not disclosed in the prior asset and debt statement. Ex "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H".

---

[9]     On December 29, 2008, the family court entered a supplemental decree reiterating Hirokazu's obligation to pay attorney's fees and costs in the amount of $14,817.55 to Aki and thus a total of $457,911.55 to Aki, inclusive of her part of the division and distribution of the parties' interests. On January 14, 2009, Hirokazu filed an amended notice of appeal, appealing the documents listed in his December 26, 2008 notice of appeal and adding the family court's December 29, 2008 Supplemental Decree.

15

30. There was also the nondisclosure of Gaitame.com. [Hirokazu] has a foreign exchange account at Gaitame.com. Ex "23" and "U". This account was not disclosed in the prior asset and debt statement. Ex "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H".

31. There was also the nondisclosure of interest in Asset Gain. Admittedly, [Hirokazu] invested $10,000 in Asset Gain. Ex 52. [Hirokazu] did not disclose this information about his Asset Gain stock in his asset and debt statements. Exs "CCC", "DDD", "EEE".

32. There was also the nondisclosure of [Hirokazu's] account receivable from Avalon Cove of $45,000. Ex 37. However, this was never disclosed in [Hirokazu's] previous asset and debt statements. Exs "CCC", "DDD", "EEE".

33. There was also nondisclosure of [Hirokazu's] Receivable from Ohta. [Hirokazu] had accounts receivable in the amount of 10,000,000 yen. Ex X and 18. [Hirokazu] did not disclose the accounts receivable in his asset and debt statements. Exs "CCC", "DDD", "EEE".

34. There was also nondisclosure of intellectual property rights. [Hirokazu] did not disclosure information about the copyrights and royalty rights from [Ascom] in his asset and debt statement. Ex "CCC", "DDD", "EEE".

35. Finally, there was nondisclosure of [Hirokazu's] business interest in a company called Avalon Cove.

36. Plaintiff alleged that [Hirokazu] sold to his [Mother] 200 stocks of Avalon Cove, Inc. for 10,000,000 yen ($100,000) and denied that they were marital assets. Exhibit 36.

37. However, there is not even a signature of [Hirokazu] or his mother, the parties involved in this alleged agreement. Id.

38. In Japan, formally written contracts are usually signed and sealed. Aki testimony.

. . . .

41. This [family court] does not find any evidence of delivery of the stocks by [Hirokazu] to his [Mother]. In fact, [Hirokazu] denies delivery of the stock.

42. The [family court] does not find any evidence of monies paid by [Hirokazu] to his [Mother] for the stock from [Hirokazu's] account. The [family court] finds that [Hirokazu's] claim that there was a setoff not credible.

43. The [family court] finds that [Hirokazu] has made representation [sic] to the public in Japan that Avalon Cove is his. [Hirokazu] stated that his present income of 30,000,000 (Approx. $300,000) mostly comes from rent payments he receives from the real estates [sic] he owns in Japan. Ex "PPP."

44. [Hirokazu] argues that all of his statements were lies to the public to promote his books. [Family court]

finds that [Hirokazu's] argument is not credible.

. . . .

46. According to the appraisal reports issued by the [Appraiser], the present value of the Meguro Property (1-554-4 Megurohoncho, Meguro-ku, Tokyo Japan) is 176,017,000 yen and the Setagaya Property (5-14-26 Kamiuma, Setagaya-Ku, Tokyo Japan) is 153,640,000 yen totaling 329,657,000 yen. Exhibits "B"-"E" attached to [Aki's Position Statement], filed September 8, 2008.

47. At the time of the divorce, [Hirokazu] submitted Exhibit 37 and took the position that the two properties owned by Avalon Cove were worth 237,070.367 [sic] yen (Fixed Assets), that the Total Assets of Avalon Cove was 240,932,957 yen, and that Avalon Cove had debts in the amount of 240,392,957 yen, so that the Stockholder's Equity was 6,032,116 yen.

48. Using the appraised market value of the two real estate properties owned by Avalon Cove, the Fixed Assets value was adjusted upward from 237,070,367 yen to 329,657,000 yen. Thus the Total Assets figure was adjusted from 240,932,957 yen to 332,972,590 yen. The Total Liability & Equity was adjusted from 240,932,957 yen to 332,972,590 yen because a balance sheet must balance. The Total Liability was subtracted and the [Stockholder's] Equity figures were adjusted from 6,032,116 yen to 98,618,749 yen. The [family court] finds that 98,618,749 yen or $986,187 to be the stock value of Avalon Cove at the time of divorce.

49. In connection with the alleged stock transfer to [Hirokazu's mother] on August 16, 2004, [Hirokazu] had alleged that he sold his [Mother] 200 stocks of Avalon Cove, Inc. for 10,000,000 yen ($100,000). Exhibit 36.

50. This Court find [sic] [Hirokazu's] allegation to be an admission that the Stockholder's Equity value of Avalon Cove, Inc. was 10,000,000 yen ($100,000) at the time of marriage.

. . . .

52. [Aki] incurred EIGHT THOUSAND NINE HUNDRED AND THIRTY TWO AND 49/100 ($8,932.49) in reasonable and necessary attorney fees and costs related to discovery of [Hirokazu's] complete assets including information regarding Avalon cove in the following motions:

A. [Aki's] *Motion for Civil Sanctions Under [HFCR], Rule 37* filed December 17, 2007.

B. [Aki's] *Cross-Motion to Compel Discovery*, filed August 20, 2007.

C. [Aki's] *Motion to Determine Foreign Law as to Alleged Sale of Stock*, filed February 27, 2008.

53. [Aki] incurred SIX HUNDRED FIFTY THOUSAND (650,000) Yen in appraisal fees charged by Katsuhiro Miyata. The currency exchange rate as of August 6, 2008 was $1 = 108.11 Yen. Thus,

17

> [Aki] incurred SIX THOUSAND AND TWELVE AND 11/100 Dollars ($6,012.11) in reasonable and necessary appraisal fees.

The family court also issued the following conclusions pertinent to the division of property and equalization payments from Hirokazu to Aki:

> III. Conclusions of Law
>
> . . . .
>
>> 14. In accordance with all of the foregoing, a divorce decree providing as follows shall therefore enter:
>
> . . . .
>
>> C. PROPERTY DIVISION. All of the property of the parties not specifically distributed elsewhere in this Decree shall be distributed as follows:
>
> . . . .
>
>> 7. Avalon Cove Inc. Stocks. [Aki] is Awarded her marital partnership share of the increase in value of [Hirozaku]'s interest in Avalon Cove, Inc. from the date of the marriage to the end of the trial. Based upon [Hirozaku]'s claim in 2004, Avalon Cove's value was $100,000.00, this amount shall be the starting value. As sanctions for hiding assets, [Hirozaku] is prohibited from introducing appraised value of the properties. Based on the appraisal report, the current market price of the Setag[a]ya and Meguro properties is $3,329,796. Using [Hirozaku's] balance sheet (Ex 32), the adjusted current value of the stocks is $986,187. [Aki] shall have half of the increased amount ($886,187) as an equalization payment, i.e. FOUR HUNDRED FORTY THREE THOUSAND AND NINETY FOUR AND NO/100 Dollars ($443,094). [Hirozaku] shall pay [the Appraiser's] reasonable and necessary appraisal fees in the amount of SIX THOUSAND TWELVE AND 11/100 Dollars. ($6,012.11).

On February 22, 2013, this court filed its "Order Dismissing Appeal" on the basis that it lacked jurisdiction over the various family court orders. On March 4, 2013, Hirokazu filed his "Plaintiff/Cross-Defendant-Appellant's Motion for Reconsideration of the Court's Order Dismissing Appeal, filed on February 22, 2013," which this court denied March 8, 2013. On April 9, 2013 Hirozaku filed his application for writ of certiorari, which the Hawai'i Supreme Court accepted on May 21, 2013.

On February 13, 2014, the supreme court filed its "Order Vacating Intermediate Court of Appeals' Order Dismissing

Appeal and Remanding Appeal to ICA." The supreme court concluded the family court's November Order Re Motion for Clarification was a final, appealable order on the issue of the division and distribution of property and debts. See Aoki v. Aoki, 105 Hawaiʻi 403, 404, 98 P.3d 274, 275 (App. 2004).

## II. STANDARDS OF REVIEW

### HFCR Rule 60(b)

The standard of review for the grant or denial of a HFCR Rule 60(b) motion is whether there has been an abuse of discretion. De Mello v. De Mello, 3 Haw. App. 165, 169, 646 P.2d 409, 412 (1982).

> Under the abuse of discretion standard of review, the appellate court is not authorized to disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason.

Wong v. Wong, 87 Hawaiʻi 475, 486, 960 P.2d 145, 156 (App. 1998) (brackets omitted) (quoting Bennett v. Bennett, 8 Haw. App. 415, 426, 807 P.2d 597, 603 (1991)).

### Family Court's Exercise of Discretion

> The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

In re Doe, 77 Hawaiʻi 109, 115, 883 P.2d 30, 36 (1994) (internal quotation marks, citations, brackets, and ellipsis omitted).

### FOFs/COLs

> FOFs are reviewed under the clearly erroneous standard. An FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made.

Schiller v. Schiller, 120 Hawaiʻi 283, 288, 205 P.3d 548, 553 (App. 2009) (internal quotation marks and citations omitted).

19

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [An appellate] court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.
>
> Chun v. Bd. of Trs. of Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and brackets in original omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

Schiller, 120 Hawai'i at 288, 205 P.3d at 553.

## III. DISCUSSION

### A. Points on Appeal Nos. 5, 6, 7, 8, 10, 11 & 12 Are Dismissed.

The Hawai'i Supreme Court ruled this court has jurisdiction only over Hirokazu's appeal from the November Order Re Motion for Clarification pursuant to Hawaii Revised Statutes (HRS) § 571-54 (2006 Repl.). We decline to address Hirozaku's points on appeal numbered 5, 6, 7, 8, 10, 11 and 12 because some address subject matter that falls outside of the family court's November Order Re Motion for Clarification, and Hirokazu fails to provide argument in support of the remaining.

### B. Finding Avalon Cove to be a marital asset did not constitute clear error.

Under his first and part of his fourth points of error, Hirokazu contends the family court erred by finding Avalon Cove to be a marital asset and by considering Japanese law in support of this finding. These contentions concern the family court's November Order Re Motion for Clarification because this order is premised on Avalon Cove's status as a marital property subject to the family court's authority to divide the parties' property under HRS § 580-47 (2006 Repl.). Hirokazu's "Motion for Clarification of Divorce Decree Entered on June 24, 2008" filed July 7, 2008, was filed pursuant to HFCR Rule 60(b)(1). HFCR Rule 60(b)(1) allows for Relief From Judgment or Order "[o]n motion and upon such terms as are just, the court may relieve a

20

party . . . from any or all of the provisions of a final judgment, order or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]"

The family court made the following findings regarding the validity of Hirokazu's alleged transfer of Avalon Cove to his Mother:

> 36. [Hirokazu] alleged that [Hirokazu] sold to his [Mother] 200 stocks of Avalon Cove, Inc. for 10,000,000 yen ($100,000) and denied that they were marital assets. Exhibit 36.
>
> 37. However, there is not even a signature of [Hirokazu] or his [Mother], the parties in this alleged agreement. Id.
>
> 38. In Japan, formally written contracts are usually signed and sealed. Aki testimony.
>
> . . . .
>
> 42. The [family court] does not find any evidence of monies paid by [Hirokazu] to his [Mother] for the stock from [his] account. The [family court] finds that [Hirokazu's] claim that there was a setoff not credible.
>
> 43. The [family court] finds that [Hirokazu] has made representation [sic] to the public in Japan that Avalon Cove is his. [Hirokazu] stated that his present income of 30,000,000 (Approx. $300,000) mostly comes from rent payments he receives from the real estates [sic] he owns in Japan. Ex "PPP."
>
> 44. [Hirokazu] argues that all of his statements were lies to the public to promote his books. [Family court] finds that [Hirokazu's] argument is not credible.

Hirokazu introduced a document, alleging it evinced his sale of 200 stocks of Avalon Cove to Mother for 10,000,000 yen ($100,000) before the parties' marriage. While conceding the transfer itself was disputed, he contends the date of his August 16, 2004 transfer of his Avalon Cove interest, which pre-dated the parties' November 19, 2004 marriage, was not disputed and therefore the family court erred by finding Avalon Cove was marital property.

The family court found the "transfer" of Avalon Cove stocks from Hirokazu to his Mother was invalid because: (1) Japanese law requires signatures and seals to validly execute written contracts and there were no signatures on the alleged

21

agreements between Hirokazu and Mother; (2) the document was not a transfer of "stock certificates" as required under Japanese law; and (3) there was no evidence of delivery of the stock certificates to Mother, which is also required under Japanese law for a valid stock transfer. Japan's "Companies Act" states, "[t]ransfer of shares in a Company Issuing Share Certificate shall not become effective unless the share certificates representing such shares are delivered[.]"[10] The Avalon Cove registration with the Japanese authorities states: "Effect of Rules regarding issuance of stock certificates - The Corporation issues stock certificates[.]"

Hirokazu contends Exhibit OOO should not have been allowed into evidence because it was exchanged after the deadline to exchange exhibits (June 3, 2008) and was translated by Yamaguchi who was present at trial and testified to that exhibit. Hirokazu cites HRE Rule 615 to support his contention that, because Yamaguchi was present to earlier proceedings, she should not have been permitted to testify to her own translation of Exhibit GGG into Exhibit OOO. Under Hawaii Rules of Evidence (HRE) Rule 615 (1993), "Exclusion of witnesses":

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

(Emphasis added.)

Because he objected to the presence of Yamaguchi, and her testimony regarding Exhibit OOO, Hirokazu contends the family court reversibly erred by failing to exclude her testimony and by

---

[10] Article 128 of the Companies Act under Japanese law states: "(1) Transfer of shares in a Company Issuing Share Certificate shall not become effective unless the share certificates representing such shares are delivered; provided, however, that this shall not apply to transfer of shares that arise out of the disposition of Treasury Shares." Companies Act, Act No. 86 of July 26, 2005, art. 128, (Translated Apr. 1, 2009) (Japan), available at http://www.japaneselawtranslation.go.jp/law/detail/?id=1961&vm=04&re=02&new=1.

extension, Exhibit OOO. The family court, however, had discretion to permit Yamaguchi to testify to the accuracy of the English translations of Exhibit GGG into Exhibit OOO, which had already been stipulated to as evidence in the May 6, 2008 trial.

> The mandatory language of Rule 615, HRE, as well as the federal rule, has been interpreted as requiring the exclusion of all witnesses who do not fit within its exceptions. However, although the exclusion is generally a matter of right, the trial judge retains a measure of discretion in the application of the rule's exceptions.

State v. Culkin, 97 Hawai'i 206, 231 n. 27, 35 P.3d 233, 258 n. 27 (2001) (citation omitted, emphasis added).

"Witnesses are generally excluded from trial to prevent the possibility that testimony might be 'shaped' to match the testimony of other witnesses." Culkin, 97 Hawai'i at 258, 35 P.3d at 232 citing Bloudell v. Wailuku Sugar Co., 4 Haw. App. 498, 504, 669 P.2d 163, 169 (1983). Hirokazu points to no authorities that required the family court to disallow Yamaguchi from testifying under these circumstances. We conclude the family court did not abuse its discretion by allowing Exhibit OOO into evidence.

Hirokazu further contends the family court's consideration of Japanese law was in error because HRE Rule 202 (1993) and Hawai'i Rules of Civil Procedure (**HRCP**) Rule 44.1 required Aki to provide him notice before the family court could take judicial notice of "the laws of foreign countries[.]" HRCP Rule 44.1 "Determination of Foreign Law" provides:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Hawai'i Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

(Emphasis added.)

Aki cited HRCP Rule 44.1 as the applicable standard in her February 27, 2008 "Motion to Determine Foreign Law As To Alleged Sale Stocks" wherein she moved the family court "for an order determining that under Japanese law, as a matter of law,

[Hirokazu] ha[d] failed to show that the stocks he held for Avalon Cove, Inc. were transferred to [Mother] because the alleged transfer [did] not comply with Article 128(1) of the Companies Act (Japanese law)." Aki's pleading cited Act 128 of (Japan's) Companies Act, requiring the issuance of a share certificate to make a transfer effective, thus providing notice to Hirokazu in compliance with HRCP Rule 44.1.

Pursuant to HRCP Rule 44.1, the family court was permitted to consider testimony offered by Aki in determining whether seals or signatures are required for valid transactions under Japanese law. We do not conclude the family court reversibly erred by not-relying on Hirokazu's multiple trial documents and his testimony regarding Japanese legal standards for stock certificate transfers. See Fisher v. Fisher, 111 Hawai'i 41, 46, 137 ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." (internal quotation marks and citation omitted)).

We conclude the family court did not err by finding that Hirokazu was the owner of Avalon Cove at the time of marriage so as to render Avalon Cove marital property.

> C. Awarding Aki one-half of the increase in
> Hirokazu's Stockholder Equity in Avalon Cove
> did not constitute an abuse of discretion

Hirokazu's second point of error is that the family court erred by awarding Aki one-half of the conjectural increase in Hirokazu's stockholder equity in Avalon Cove because the record lacks evidence that any such increase occurred. Hirokazu contests the family court's finding that his equity interest in Avalon Cove increased during the marriage because: (1) he submitted multiple documents and testimony that showed the value of Avalon Cove decreased during the marriage; (2) Aki failed to offer any evidence that the value of Avalon Cove increased during the marriage; and (3) the family court merely "conjectured" that Avalon Cove appreciated in value during the term of the marriage

24

because there was no evidence of any such appreciation and, as a result, erred in awarding Aki an equalization payment from Avalon Cove.

His third point of error is that the family court erred by directing the parties to submit written appraisals of the Setagaya and Meguro properties for the family court's selection without an evidentiary hearing - directly implicates the family court's decision to use its sanctioning power as a basis for awarding Aki a share of Avalon Cove. Hirokazu contests the family court's selection of the real estate appraiser of Avalon Cove without conducting a hearing on that selection. He contends this decision denied his counsel the opportunity to call Avalon Cove's accountants as witnesses, to cross-examine the selected appraiser, and to address the validity of the appraisal submitted before the family court. Hirozaku contends the family court thus "allowed in hearsay evidence without the proper foundation being laid" and therefore FOF 48 is unsupported by substantial evidence.[11] We note that Hirokazu failed to cite the record or authorities in support of his third point of error and therefore may be deemed waived. See HRAP Rule 28(b)(7) (requiring appellants to support their contentions with argument and citations to authorities, statutes, and parts of the record on which the appellant relied).

Hirokazu's fourth point on appeal is that the family court "erred in not conducting an evidentiary hearing to determine the value of Avalon Cove as of the date of the

---

[11]    FOF 48 states:

> Using the appraised market value of the two real estate properties owned by Avalon Cove, the Fixed Assets value was adjusted upward from 237,070,367 yen to 329,657,000 yen. Thus the Total Assets figure was adjusted from 240,932,957 yen to 332,972,590 yen. The Total Liability & Equity was adjusted from 240,932,957 yen to 332,972,590 yen because the balance sheet must balance. The Total Liability was subtracted and the [Stockholder's] Equity figures were adjusted from 6,032,116 yen to 98,618,749 yen. The [circuit court] finds that 98,618,749 yen or $986,187 to be the stock value of Avalon Cove at the time of the divorce.

marriage." Hirokazu alleges: (1) the appraisal report was never introduced into evidence; (2) the Appraiser was picked arbitrarily by the family court based on the cost of the appraisal; (3) there is nothing to indicate in the record to show that the family court read the appraisal report; (4) there was no evidence regarding the qualifications of the Appraiser; (5) Hirokazu's counsel was not afforded the opportunity to "examine the working papers or source documents utilized by" the Appraiser; (6) there was no opportunity for Hirokazu's counsel to cross-examine the Appraiser; and (7) "there [was] no evidence that [the Appraiser] used the same basis of valuing the two properties on June 24, 2008 as was the basis used by Avalon Cove for valuing the two properties for accounting purposed on July 1, 2007, there being a significant difference between a property's fair market value and how that same property is carried on the books of a corporation for accounting purposes."

The family court made the following FOFs and COL regarding Hirokazu's interests in Avalon Cove:

> 46. According to the appraisal reports issued by [the Appraiser], the present value of the Meguro Property (1-554-4 Megurohoncho, Meguro-ku, Tokyo Japan) is 176,017,000 yen and the Setagaya Property (5-14-26 Kamiuma, Setagaya-Ku, Tokyo Japan) is 153,640,000 yen totaling 329,657,000 yen. Exhibits "B"-"E" attached to [Aki's Position Statement as to Hirokazu's Motion for Clarification of Divorce Statement], filed September 8, 2008.

> 47. At the time of the divorce, [Hirokazu] submitted Exhibit 37 and took the position that the two properties owned by Avalon Cove were worth 237,070.367 [sic] yen (Fixed Assets), that the Total Assets of Avalon Cove was 240,932,957 yen, and that Avalon Cove had debts in the amount of 240,392,957 yen, so that the Stockholder's Equity was 6,032,116 yen.

> 48. Using the appraised market value of the two real estate properties owned by Avalon Cove, the Fixed Assets value was adjusted upward from 237,070,367 yen to 329,657,000 yen. Thus the Total Assets figure was adjusted from 240,932,957 yen to 332,972,590 yen. The Total Liability & Equity was adjusted from 240,932,957 yen to 332,972,590 yen because a balance sheet must balance. The Total Liability was subtracted and the [Stockholder's] Equity figures were adjusted from 6,032,116 yen to 98,618,749 yen. The [circuit court] finds that 98,618,749 yen or $986,187 to be the stock value of Avalon Cove at the time of divorce.

49. In connection with the alleged stock transfer to [Hirokazu's Mother] on August 16, 2004, [Hirokazu] had alleged that he sold to his [Mother] 200 stocks of [Avalon Cove] for 10,000,000 yen ($100,000). Exhibit 36.

50. [Circuit court] find [sic] [Hirokazu's] allegation to be an admission that the Stockholder's Equity value of [Avalon Cove] was 10,000,000 yen ($100,000) at the time of marriage.

. . . .

52. [Aki] incurred [$8,932.49] in reasonable and necessary attorney fees and costs related to discovery of [Hirokazu's] complete assets including information regarding Avalon cove in the following motions:

A. [Aki's] *Motion for Civil Sanctions Under [HFCR], Rule 37* filed December 17, 2007.

B. [Aki's] *Cross-Motion to Compel Discovery,* filed August 20, 2007.

C. [Aki's] *Motion to Determine Foreign Law as to Alleged Sale of Stock,* filed February 27, 2008.

Hirokazu's second, third, and fourth points of error raised issues that were taken up by the family court's November Order Re Motion for Clarification. In that order, the family court found that no evidentiary hearing was needed to determine the appraised value of Avalon Cove "because [the family court's] ruling as to the valuation method of Avalon Cove reflects sanctions against [Hirokazu] for concealing assets" and awarded Aki equalization payments for Avalon Cove. Hirokazu's contentions thus challenge the family court's use of its sanctioning power as a basis for awarding Aki a share of Avalon Cove in its November Order Re Motion for Clarification.

"We review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view of the factors set forth in HRS § 580-47 and partnership principles." Tougas v. Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994) (internal quotation marks, citation, and omitted). "There is no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580-47." Au-Hoy v. Au-Hoy, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979). HRS § 580-47 does not promulgate a "hard and fast rule" for the

division of property, <u>Gussin v. Gussin</u>, 73 Haw. 470, 479, 836 P.2d 484, 489 (1992) (citations omitted), but "gives to the family court the discretion to divide marital property according to what is just and equitable." <u>Ferreira v. Ferreira</u>, No. 28912, 22 (App. Nov. 18, 2009) (mem) (internal quotation marks, citation and brackets omitted). The family court must divide and distribute property pursuant to a divorce in a just and equitable manner; this division need not be equal. <u>See</u> <u>Au-Hoy</u>. In pertinent part, HRS § 580-47(a) provides:

> **§580-47 Support orders; division of property.** (a) Upon granting a divorce, . . . by agreement of both parties or by order of court <u>after finding that good cause exists</u>, the court may make any further orders as shall appear just and equitable . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. <u>In making these further orders, the court shall take into consideration</u>: <u>the respective merits of the parties</u>, the relative abilities of the parties, the condition in which each party will be left by the divorce, . . . <u>and all other circumstances of the case</u>.

(Emphases added.)

Hirokazu contends the family court did not enter any findings that "good cause" existed or "any findings that would form a basis for an implied finding that good cause existed" for its order requiring the parties "to each submit three written hearsay appraisals of the Setagaya and Meguro properties owned by Avalon Cove in order to determine the extent (if any) of increase in value of properties[.]" Contrary to Hirozaku's assertion, the family court entered numerous findings that constitute "good cause" for ordering the parties to submit appraisals of the Avalon Cove properties and determining Hirokazu's equalization payment to Aki. The family court was permitted to consider, "the respective merits of the parties" and "all . . . circumstances of the case[,]" including the credibility of Hirokazu's testimony, his documentary evidence, and his failures to disclose or accurately represent his interest in Avalon Cove. HRS

28

§ 580-47(a). The family court found Hirokazu failed to disclose his business interest in Avalon Cove and an account receivable from Avalon Cove of $45,000 in his asset and debt statements. The family court found Hirokazu violated the June 22, 2006 financial restraining order[12] and concealed or misrepresented many of his assets,[13] including Avalon Cove.

The family court further found Hirokazu represented himself "to the public in Japan that Avalon Cove is his." He stated his present income of $300,000 "mostly comes from rent payments he receives from the real estates he owns in Japan." In the November Order Re Motion for Clarification, the family court found inconsistencies between Hirozaku's representations of the value of Avalon Cove:

> Exhibit 37, submitted by Hirokazu at trial as the alleged value of Avalon Cove is not in agreement with the [October Supplemental Declaration]. In the [October Supplemental Declaration, Okimoto] implied that Exhibit 37 may be merely a book value of Avalon Cove. If this is true, it is in

---

[12] The family court's FOF 26 stated Hirokazu violated the June 22, 2006 financial restraining order by "substantively reducing the account at Citibank, Japan . . .; closing [] his bank account at Mitsui-Sumitomo Bank . . .; selling his Mercedes M1320 and 1995 Yamaha Wave Runner; closing [the] Ameriprise account . . .; closing [the] E-trade account . . .; and selling Asset Gain in June of 2007 for $40,000 . . ."

[13] In his prior asset and debt statements and interrogatories, Hirokazu failed to:

1. disclose the Ameritrade account, an account that was opened during the marriage, FOF 27;

2. disclose the HS Trading account, an account that existed as of the marriage, FOF 28;

3. disclose his shares of Prego, which he invested in and claimed he was deceived yet failed to produce evidence that he filed a lawsuit in Japan, FOF 29;

4. disclose his interests in Gaitame.com, a foreign exchange account, FOF 30;

5. disclose his interest in Asset Gain, in which he admittedly invested $10,000, FOF 31;

6. disclose his accounts receivable in the amount of 10,000,000 yen from Ohta, FOF 33; and

7. disclose information about the copyrights and royalty rights from Ascom, FOF 34.

> conflict with Hirokazu's initial position that the alleged $100,000 stock sale to his [Mother] was a legitimate transaction. This would imply that the alleged stock sale approximated the book value and not the fair market value, impeaching Hirokazu's own statement that the transaction was legitimate. The doctrine of quasi-estoppel prohibits the reconsideration of the value of Avalon Cove at the time of marriage.

(Emphasis added.)

The family court properly applied the doctrine of quasi-estoppel, cited in COL 7, as the proposition that a "party is precluded from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. No misrepresentation or concealment of facts by one and ignorance of the other are necessary." Roxas v. Marcos, 89 Hawai'i 91, 124 n.19, 969 P.2d 1209, 1242 n.19 (1998) (internal quotation mark, citations, brackets, and emphasis omitted). Exhibit 37 shows the stockholder's equity as of August 1, 2004 as approximately 6,745,979 yen ($67,460) and approximately 6,032,116 yen ($60,321) as of August 1, 2006. This period includes the time of the parties' November 2004 marriage. Hirokazu's assertion that Exhibit 37 represents his equity interest in Avalon Cove is inconsistent with his earlier representation of his equity interest in Avalon Cove as 10,000,000 yen ($100,000) and therefore the family court did not err in preventing Hirokazu from asserting Exhibit 37 demonstrated that his equity interest had decreased over the parties' marriage.

The family court also specified it ordered the appraisal of Avalon Cove, as opposed to submitting the matter to an evidentiary hearing, as a sanction against Hirokazu for concealing his assets and inconsistently representing Avalon Cove's value. The family court's order was guided by its COL 6 that a court "may award to one party hidden assets of the other party." Sands v. Sands, 482 N.W.2d 203 (Mich. Ct. App. 1992)[14]

---

[14] The Michigan appeals court found it was "inappropriate for the court to award Mr. Sands any share of assets he attempted to conceal. Once a spouse intentionally has misled the court or the opposing spouse regarding the existence of an asset, that spouse should be estopped from receiving any part

(continued...)

(holding that hidden assets can be awarded to the other party) (Sands 1); see also Ferreira.

The Michigan Supreme Court affirmed Sands 1, but specified that "[a]n attempt to conceal assets does not give rise to an automatic forfeiture" because a division of property based solely on "fault" would fail to consider other factors considered relevant to the circumstances of a particular case and required Michigan courts to consider factors enumerated in Sparks v. Sparks, 485 N.W.2d 893, 901 (1992). Sands v. Sands, 497 N.W.2d 493, 496-97 (1993). Unlike Michigan, in Hawai'i, "[f]ault pertaining to personal conduct of the spouses toward each other has no bearing on the question as to which spouse has a better claim to the property sought to be divided in a divorce proceeding." Horst v. Horst, 1 Haw. App. 617, 624, 623 P.2d 1265, 1270-71 (1981). We conclude the family court erred by relying on Sands 1, but do not disturb its decision to impose an appraisal valuation method, as opposed to an evidentiary hearing, as a sanction. The family court issued its Order re Appraiser, and later clarified that the order represented sanctions against Hirokazu in its November Order Re Motion for Clarification. Until Aki introduced her appraiser's report, Hirokazu's Exhibit 37 (Avalon Cove Financial Statements) was the sole statement of Avalon Cove's values. In his October Supplemental Declaration, Hirokazu's counsel subsequently indicated that factual issue existed as to whether Exhibit 37 carried the Avalon Cove properties on corporate accounting records at either book value or fair market value and requested an evidentiary hearing to determine Avalon Cove's value "using the same valuation model (i.e. book value or fair market value) as Trial Exhibit No. 37." The family court found Hirokazu's declarations regarding Exhibit

---

[14](...continued)
of that property." Sands 1, 482 N.W. 2d at 206. As such they directed the lower court "to award full ownership of these particular assets or their equivalent value to Mrs. Sands before making an equal split of the remaining assets. This course of action should have the salutary effect not only of adjusting the equities in this case but also of serving as a warning to all divorcing parties." Id. at 206.

"may be merely a book value of Avalon Cove." If true, they were inconsistent with Hirokazu's initial position that his stock sale to his mother was a "legitimate transaction." The family court then apparently determined to depart from its divorce decree, which permitted but did not require the parties to submit Japanese real estate appraisers for the court's selection, and rather ordered the parties to use Aki's appraiser as a sanction.

Hawai'i law grants the family court discretion to impose sanctions against Hirokazu for concealment or misrepresentations:

> The imposition of a sanction is generally within the discretion of the trial court. In reviewing whether a trial court's dismissal of a claim as a discovery sanction constitutes an abuse of discretion, appellate courts consider the following five factors: (1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party moving for sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 71, 229 P.3d 1133, 1136 (2010) (internal quotation marks, citations and brackets omitted).

Ordering the parties to submit the value of Avalon Cove to an appraiser as opposed to conducting an evidentiary hearing: (1) expedited the resolution of the litigation; (2) facilitated the family court's management of its docket by simplifying the procedures for valuing Avalon Cove; (3) posed no prejudice to Aki, who was not required to pay for the appraisal; (4) did not allow the parties to litigate merits relating to potential disputes over the market or book value of Avalon Cove; and (5) itself represented a reasonable solution to the unavailability of a consistent valuation of Avalon Cove and a less drastic sanction than an outright award of the Avalon Cove properties to Aki. The balance of the Weinberg factors weigh in favor of the family court's imposition of an appraisal valuation method as a sanction against Hirokazu and therefore the court's sanctions do not represent an abuse of discretion.

Finally, the family court's inherent powers, as

restated in HRS § 571-8.5(a) (2006 Repl.),[15] include the power to "[e]nforce decrees and judgments and punish contempts according to law" and to "[m]ake and award judgments, decrees, orders, and mandates, issue executions and other processes, and do other acts and take other steps as may be necessary to carry into full effect the powers that are or shall be given to [it] . . ." HRS § 571-8.5(a)(6), (10). The family court did not abuse its discretion by using the November Order Re Motion for Clarification to effectuate its earlier order requiring the parties to submit Avalon Cove to appraisal. In light of alternative bases for affirming its order, the family court's apparent erroneous reliance on Sands 1 does not constitute reversible error. See Sierra Club v. Dep't. of Transp. of State of Hawai'i, 120 Hawai'i 181, 230, 202 P.3d 1226, 1275 (2009) ("where the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action.").

Hirozaku contends the family court could not exercise its powers to divide the parties' property under HRS § 580-47 because it did not know the identity and value of both the debts of the parties and the property in the estate of the parties. Hirozaku further contends that the family court should not have commenced trial until at least one party had satisfied his/her burden of identifying all of his/her/their assets and liabilities and stated the market value of each. This contention is unavailing.

The Hawai'i Supreme Court has held that a party's

---

[15]    HRS § 571-8.5(a)(10) provides in relevant part:

§571-8.5 Powers. (a) The district family judges may:

. . .

(10)    Make and award judgments, decrees, orders, and mandates, issue executions and other processes, and do other acts and take other steps as may be necessary to carry into full effect the powers that are or shall be given to them by law or for the promotion of justice in matters pending before them[.]

failure to provide the court with evidence of market value does not deprive the family court of its discretion to "review the full record to determine an equitable value." Teller v. Teller, 99 Hawai'i 101, 115, 53 P.3d 240, 254 (2002). A property's fair market value is used to determine the value of property that is to be divided in a divorce case. Teller, 99 Hawai'i at 113, 53 P.3d at 252. The fair market value is "the value in money of any property for which that property would sell on the open market by a willing seller to a willing buyer." City & Cnty. of Honolulu v. Steiner, 73 Haw. 449, 454, 834 P.2d 1302, 1306 (1992). Competent evidence of the value must exist to support the family court's division of property. See Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999). However, the family court acts within its discretion to determine an equitable value based on the full record despite a party's failure to provide the court with evidence of market value. See Teller, 99 Hawai'i at 115, 53 P.3d at 254. A party cannot complain as to the division of an asset if that party fails to offer credible evidence of an asset's value. See Booth, 90 Hawai'i at 416, 978 P.2d at 854. The family court did not clearly err by using 10,000,000 yen ($100,000) as the value of Avalon Cove at the time of marriage because this was the amount at which the stocks changed hands from a willing seller, Hirokazu, to a willing buyer, Mother, where there was no evidence that either Hirokazu or Mother were under any compulsion to buy or sell and no evidence that either failed to have reasonable knowledge of the relevant facts. See Steiner, 73 Haw. at 454, 834 P.2d at 1306.

The family court's finding that Hirokazu admitted to 10,000,000 yen or $100,000 as the value of his interest in Avalon Cove did not constitute clear error and could be construed as Hirokazu's identification of the market value of Avalon Cove for purposes of satisfying HRS § 580-47. Hirokazu represented that he transferred his 200 shares of Avalon Cove to his Mother on August 16, 2004 for 10,000,000 yen ($100,000). The family court found Hirokazu's allegation of this stock transfer to be "an

admission that the Stockholder's Equity value of [Avalon Cove] was 10,000,000 yen ($100,000) at the time of marriage" and thereafter used this number to calculate the increase in Avalon Cove Stocks during the life of the marriage.

The appraisal reports substantiate the family court's FOFs 46-48, which found the stock value of Avalon Cove was 98,618,749 yen ($986,187) at the time of the divorce. Subtracting the stock value at the time of the marriage (10,000,000 yen or $100,000)) from the stock value at the time of the divorce, 98,618,749 yen ($986,187), the family court calculated the increase value of the stocks during the marriage to be 88,618,749 yen ($886,187) and thus arrived at 44,309,379 yen ($443,094) for Hirokazu's equalization payment to Aki.

We conclude the family court did not abuse its discretion by awarding Aki one-half of the increase in Hirokazu's Stockholder Equity in Avalon Cove in the amount of 44,309,379 yen ($443,094).

### D. The family court's ruling on the Ameritrade issue did not impair Hirokazu's substantial rights.

Hirokazu contends his Ameritrade account, which was opened during the marriage on July 26, 2005, was a securities account that was mislabeled as a retirement account, and therefore the family court erred in ordering its division and distribution. In the November Order Re Motion for Clarification, the family court denied Hirozaku's motion to clarify this issue because the "court's ruling on the Ameritrade issue . . . was based upon [Hirozaku's] own position[.]" Hirokazu raised this issue at the October 8, 2008 hearing on his motion to clarify. Aki did not contest his contention, but urged the family court to notice that the Ameritrade account had not been disclosed until Hirozaku's last Asset and Debt Statement and to award it to Aki as a sanction. The family court found Hirozaku failed to disclose the Ameritrade account in his Asset and Debt Statements dated April 9, 2007, May 15, 2006, and August 20, 2007. Hirokazu did not disclose his Ameritrade account until he filed his April

35

28, 2008 Asset and Debt Statement, five business days before the trial began.

Despite the confusion about characterizing the Ameritrade account, we decline to disturb family court's November Order Re Motion for Clarification denial of Hirokazu's motion to clarify. Hirokazu fails to cite any authority to support his apparent contention that the family court's alleged misnomer should change the outcome of the division of this property on appeal. See HRAP Rule 28(b)(7). Moreover, error "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" HRE Rule 103(a) (Supp. 2013); see also Schiller v. Schiller, 120 Hawai'i 283, 295, 205 P.3d 548, 560 (App. 2009) (holding that a parties' substantial rights were not affected under HRE Rule 103(a) by the family court's confusion of $12,000 assigned to a savings account with the $12,000 value of household goods). The divorce decree awarded Hirokazu his retirement accounts and securities as his sole and separate property. Consequently, we discern no impairment to Hirokazu's substantial rights.

For the foregoing reasons, we decline to find the family court abused its discretion by denying Hirokazu relief under HFCR Rule 60(b)(1).

## IV. CONCLUSION

The "Order (re: Hearing on Plaintiff's Motion for Clarification of Divorce Decree Entered on June 24, 2008 Filed·on July 7, 2008, and Other Matters)," entered November 26, 2008 in the Family Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 9, 2014.

On the briefs:

Blake T. Okimoto
for Plaintiff/Cross-
Defendant/Appellant.

Associate Judge

Junsuke Otsuka
for Defendant/Cross-
Plaintiff/Appellee.

Associate Judge